# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**IMPERIUM INSURANCE COMPANY**             **PLAINTIFF**

**VS.**        **CIVIL ACTION NO.** 1:14CV83-SA-DAS

**JASON SHELTON, SHELTON & ASSCOCIATES, P.A.,
AND KAREN CAVINESS, ADMINISTRATRIX OF THE
ESTATE OF MAMIE KATHERINE CHISM, DECEASED**        **DEFENDANTS**

---

## COMPLAINT FOR DECLARATORY JUDGMENT

## [JURY TRIAL DEMANDED]

---

COMES NOW Plaintiff, Imperium Insurance Company, and files this, its Complaint for Declaratory Judgment, pursuant to FED. R. CIV. P. 57 and 28 U.S.C. §§ 2201 and 2202, against Jason Shelton, Shelton & Associates, P.A., and Karen Caviness, Administratrix of the Estate of Mamie Katherine Chism, deceased.

### A. PARTIES

1. Plaintiff, Imperium Insurance Company ("Imperium"), is a domestic company organized and existing pursuant to the laws of the State of Texas, with its principal place of business located at 800 Gessner Road, Suite 600, Houston, Texas, 77024-4538.

2. Defendant, Jason Shelton ("Shelton"), is an adult resident citizen of the State of Mississippi. Shelton is licensed to practice law in Mississippi and is an attorney employed by the Shelton & Associates law firm.

1

3.      Defendant, Shelton & Associates, P.A. ("Shelton & Associates"), is a Mississippi professional corporation with its principal place of business located in Tupelo, Lee County, Mississippi. Shelton & Associates can be served with process by serving its registered agent for service of process, Jason Shelton, at 218 N. Spring Street, Tupelo, Mississippi 38802.

4.      Defendant, Karen Caviness ("Caviness"), is an adult resident citizen of Union County, Mississippi. Caviness is the Administratrix of the Estate of Mamie Katherine Chism, deceased.

### B. JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to pursuant to 28 U.S.C. § 1332 and/or 28 U.S.C. § 1367, as the plain language of the Complaint, which includes claims for both compensatory and punitive damages, establishes that the amount in controversy exceeds $75,000.00, the dispute is between citizens of different states, such that there exists complete diversity of citizenship between the parties.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b), in that one or more of the Defendants herein are residents of the district encompassed by the United States District Court for the Northern District of Mississippi, Aberdeen Division.

### C. FACTS

7.      Imperium issued a "claims made and reported" Lawyers Professional Liability Insurance Policy to Shelton & Associates, bearing policy number IFI 770968-00, with a policy period from February 1, 2013 to February 1, 2014. A true and correct copy of said policy, including all endorsements thereto, as well as the application for insurance furnished to

Imperium by Shelton & Associates and which is made a part of the policy pursuant to the terms of the same, is attached hereto and incorporated herein as *Exhibit "A."*[1]

8.  On or about January 6, 2104, Caviness filed a lawsuit against Shelton and Shelton & Associates, P.A. (collectively "Shelton Defendants"), alleging negligence/legal malpractice and breach of fiduciary duty in the Shelton Defendants' representation of the Estate of Mamie Katherine Chism ("Chism") in a wrongful death lawsuit against the manufacturers of the prescription drug, Vioxx ("Caviness's Complaint"). See *Exhibit "B"* hereto.[2] As set forth in the Complaint, Chism's lawsuit was initially filed in the Circuit Court of Tippah County, Mississippi, but was subsequently removed to Federal Court, and transferred to a Multidistrict Litigation proceeding pending in the United States District Court for the Eastern District of Louisiana ("MDL"). *Id.* at ¶¶ 13-14.

9.  The manufacturers of Vioxx, Merck & Co., Inc. ("Merck") subsequently agreed to settle all Vioxx claims pending in the MDL. See *Exhibit "B"* hereto. The Shelton Defendants enrolled the Chism claim in the Vioxx settlement program, which required that the plaintiffs/claimants to provide "basic information relating to the person who took Vioxx, including proof that the person took Vioxx." *Id.* at ¶¶ 16-17.

10. In her Complaint against the Shelton Defendants, Caviness alleges, in relevant part, that the Shelton Defendants failed "to submit the required information to the settlement

---

[1] To safeguard against the disclosure of potential confidential or proprietary information, certain matters have been redacted from the Imperium policy, including certain endorsements thereto and the application for insurance furnished to Imperium by Shelton & Associates.

[2] As alleged in Caviness's Complaint, the Shelton Defendants were hired to represent Chism by Margaret Bailey ("Bailey"), Mamie Chism's niece. See *Exhibit "A"* at ¶¶ 7, 11. For the sake of clarity, when referring to the Vioxx claim filed on behalf of Chism, this Complaint for Declaratory Judgment will refer to such as "Chism's claim" and/or "the Chism lawsuit."

administrator," which resulted in the MDL entering a Stipulation of Dismissal with Prejudice of Chism's claim. See *Exhibit "B"* hereto, at ¶ 27. Additionally, Caviness alleges that the Stipulation of Dismissal entered by the MDL was personally signed by Shelton. *Id.* at ¶ 28. Thereafter, Shelton petitioned the MDL to allow Chism to "opt-out of the settlement program" or, alternatively, "to allow medical documentation as timely submitted." The Complaint further alleges that the Shelton Defendants admitted in this motion "that a claims package was not submitted on behalf of claimant (Mamie Chism) in a timely manner pursuant to the rules of settlement program." *Id.* at 31.

11. Caviness's Complaint further alleges that the motion to opt-out filed by the Shelton Defendants acknowledges that Chism "would qualify under the settlement because she had adequate proof of usage and died of a sudden myocardial infarction (heart attack)," and that these representations were, in fact, true. See *Exhibit "B"* hereto, at ¶¶ 32-33. Caviness asserts, however, that the Shelton Defendants' representation to the MDL that, at the time of the settlement program's filing deadline, "it was believed [Chism] would not qualify for the settlement was false," and that the Shelton Defendants "made this misrepresentation to the court in order to conceal their own negligence." *Id.* at ¶¶ 32, 34.

12. According to the Caviness's Complaint, the motion to opt-out was denied by the MDL on October 7, 2009. See *Exhibit "B"* hereto, at ¶ 35. The Complaint goes on to allege that the Shelton Defendants failed to disclose the "true circumstances surrounding the dismissal of Mamie Chism's claim from the Viox litigation," and that Chism's claim "was dismissed as a direct result of [the Shelton Defendants'] negligence." *Id.* at ¶¶ 36-37. Further, Caviness alleges that the Shelton Defendants "fraudulently concealed their negligent conduct," as well as their

alleged breach of fiduciary duty, and they it was not until 2013 that the Shelton Defendants' negligence was made known. *Id*. at ¶¶ 38-41.

   13. Based on the preceding factual allegations, Caviness asserts causes of action against the Shelton Defendants for Negligence/Legal Malpractice and Breach of Fiduciary Duty, and "seeks a verdict for all damages incurred by [Chism's] estate, plus all costs of court and accrued interest at the legal rate from the date of the judgment and attorney's fees and expenses incurred in this action." See *Exhibit "B"* hereto, at ¶¶ 42-48.

   14. Additionally, Caviness asserts a cause of action for and/or seeks punitive damages from the Shelton Defendants, alleging "intentional conduct in order to fraudulently conceal Defendants' negligence." See *Exhibit "B"* hereto, at ¶ 50. Caviness further asserts that "[p]unitive damages should be assessed against Defendants in a sufficient amount to punish them and deter similarly situated persons and entities from committing similar acts in the future." *Id*. at ¶ 51.

   15. As set forth in the *ad damnum* clause of her Complaint, Caviness "demands judgment against Defendants in an amount in excess of $50,000.00 for compensatory damages, punitive damages, costs, attorney's fees and pre and post judgment interest." *Id*. (last unnumbered paragraph beginning "WHEREFORE").

   16. Significantly, Caviness's Complaint also alleges that "[d]uring the 2008-09 time period, the offices of Jason Shelton and Shelton & Associates were in turmoil." See *Exhibit "B"* hereto, at ¶ 23. Caviness further alleges that "[t]he attorneys in the office were largely absent and delegated the task of compiling and submitting information related to the firm's many Vioxx clients to non-attorney staff members." *Id*. Caviness additionally alleges that "[t]he staff member(s) charged with compiling and submitting client information related to the Vioxx

settlements did not complete the work for many firm clients," and that "[a]s a result, the Vioxx claims for many of the Defendants' clients were dismissed." *Id.* at ¶¶ 24-25.

17. Consistent with the preceding allegations, Imperium was advised by the Shelton Defendants of an identical claim asserted against them by Mr. James Harbin ("Harbin"), who likewise alleged that Shelton & Associates failed to timely submit the information required to perfect his claim with the Vioxx settlement program. See *Exhibit "C"* hereto. Imperium was advised of the Harbin claim on or about January 28, 2013, a few days prior to the effective date of the Imperium policy. *Id.* Accordingly, and as discussed more thoroughly below, Imperium issued a revised "INCIDENT EXCLUSION" expressly providing that "[t]his policy does not apply to any CLAIM arising out of the facts or circumstances" associated with Harbin, among others. See *Exhibit "A"* hereto. Imperium further issued a "GENERAL CHANGE ENDORSEMENT" to its policy, which likewise provided that the parties "understood and agreed" and that the previously mentioned "Incident Exclusion will apply for the matter involving James Harbin in the letter from Philip W. Thomas Law Firm." *Id.*

18. After investigation of the matters asserted in the Chism Complaint, and reviewing the above referenced Lawyers Professional Liability Insurance Policy and applicable law, Imperium notified the Shelton Defendants that the above referenced Lawyers Professional Liability Insurance Policy does not afford insurance coverage for the Chism claim, but that Imperium would provide the Shelton Defendants a defense under a reservation of rights. See *Exhibit "D"* hereto. In advising the Shelton Defendants that a defense would be furnished under a reservation of rights, Imperium specifically reserved its right to later disclaim coverage and to seek a declaration by a court of competent jurisdiction of its rights and duties under the above referenced Lawyers Professional Liability Insurance Policy. See *Exhibit "D"* hereto.

19. There is presently a pending dispute between the parties over whether the Lawyers Professional Liability Insurance Policy referenced above provides indemnity coverage for any of the claims and damages arising from the allegations and/or acts alleged in Caviness's Complaint, which is ripe for a declaratory judgment determination by this Court.

20. As contended insureds, the Shelton Defendants, both individually and collectively, have an interest in this action. As the plaintiff in the underlying civil action against the Shelton Defendants, for which coverage is sought under the Lawyers Professional Liability Insurance Policy referenced above, Caviness also has an interest in this action.

### D. RELEVANT POLICY PROVISIONS

21. The parameters of coverage under Imperium's policy, which was in effect from February 1, 2013 through February 1, 2014, are described, in relevant part, as follows:

> THIS IS A CLAIMS MADE AND REPORTED POLICY WITH CLAIM EXPENSES INCLUDED WITHIN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY. THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED.
>
> * * *
>
> **I.  INSURANCE AGREEMENTS**
>
>     **A.  COVERAGE - PROFESSIONAL LIABILITY**
>
> The Company shall pay on behalf of any INSURED all DAMAGES in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to any such CLAIMS arising out of the conduct of the INSURED'S profession as a Lawyer, or as a Lawyer acting in the capacity of an Arbitrator, Mediator, Neutral, Title Insurance Agent, Notary Public, A Governmental Affairs Advisor, Lobbyist, member,

director, officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law.

See *Exhibit "A"* hereto (Page 1 of 17).

22. The policy further provides the following relevant definitions:

**XI. DEFINITIONS**

* * *

2. CLAIM means a demand made upon any INSURED for DAMAGES, including, but not limited to, service suit or institution of any alternative dispute resolution proceedings against any INSURED. CLAIM also includes and is not limited to privacy claims and client network damage claims.

* * *

4. DAMAGES means the monetary and compensatory portion of any judgment, award or settlement , damages also include those amounts the court is permitted to impose on a debt collector as set forth in 15USC§1692k(a)., provided always that DAMAGES shall not include:

    A. legal fees, commissions, compensation, costs and expenses paid or incurred or charged by the insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set off or otherwise and injuries that are a consequence of any of the foregoing:

    > sanctions, forfeiture, penalties or criminal fines, however, the COMPANY shall pay up to $10,000 in the AGGREGATE for the POLICY PERIOD for awards under RULE 11 of the Federal Rules of civil procedure or its State counterpart;

    B. matters deemed uninsurable;

* * *

7. INSURED means:

    A. the NAMED INSURED;

      B.      any past or present partner, officer, director, lawyer (including a government affairs advisor or lobbyist), member of a professional association, professional corporation, limited liability corporation, limited liability partnership, professional limited liability corporation, stockholder, employee, legal assistant, law firm administrator, para legal, independent contractor or of counsel of the NAMED INSURED, but only as respects professional services rendered on behalf of the NAMED INSURED;

\* \* \*

18.    RELATED ACTS OR OMISSIONS means all acts or omissions in the rendering of legal services or non-profit. Ouside entity services that are logically or causally connected by a common fact, circumstance, situation, transaction, event, advice or decision.

19.    RELATED CLAIMS mean all claims arising out of a single act or omission or arising out of related acts or Omissions in the rendering of legal services or non-profit outside entity services.

\* \* \*

21.    WRONGFUL ACT(S) means any actual or alleged:

    A.    act;
    B.    error,
    C.    omission;
    D.    misstatement;
    E.    misleading statements;
    F.    neglect or breach of duty, network privacy; or
    G.    personal injury or
    H    advertising injury

See *Exhibit "A"* hereto (Pages 5-7 of 17).[3]

23.    Additionally, the policy excludes coverage for certain matters, as follows:

## XII. EXCLUSIONS

This policy does not apply to:

---

[3] The "NAMED INSURED" listed on the declarations page of the Imperium policy is "Shelton & Associates." See *Exhibit "A"* hereto. Imperium does not dispute that Defendant, Jason Shelton, would be considered a "past or present partner, officer, director, [or] lawyer" under the policy.

    I.      any CLAIM that results in any final judgment or final adjudication against any INSURED based upon or arising out of any criminal, intentional, dishonest, fraudulent or malicious WRONGFUL ACT. This exclusion does not apply to any INSURED who is not so adjudged;

    II.     any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if:

        A.     the matter had previously been reported to any insurance company or,

        B.     if the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B. does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM; …

See *Exhibit "A"* hereto (Page 8 of 17).

    24.    Further, the policy's "LIMITS OF LIABILITY AND DEDUCTIBLE" section contains the following relevant provisions:

    V.     MULTIPLE OF INSUREDS, CLAIMS AND CLAIMANTS

        A.     The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not operate to increase the limits of liability and deductible.

        B.     Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related WRONGFUL ACTS shall be treated as a single CLAIM.

        C.     All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such WRONGFUL ACT was first made and all such CLAIMS are subject to the same limits of liability and deductible.

See *Exhibit "A"* hereto (Page 10 of 17).

    25.    Further, the "CONDITIONS" section of the Imperium policy includes the following relevant provision:

    XI.    OTHER INSURANCE

> Except for those CLAIMS specifically excluded pursuant to Exclusion III, if there is other insurance applicable to a CLAIM covered by this policy, this policy shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.

26. The policy issued to the Shelton Defendants by Imperium also includes a "PRIOR AND PENDING LITIGATION ENDORSEMENT," which expressly states that it is "understood and agreed" by Imperium and the Shelton Defendants that Imperium "has no duty to defend or indemnify an INSURED for, and this policy does not apply to any CLAIM based upon or arising out of any demand, suit, or proceeding pending, or order, decree, settlement or judgment entered against the NAMED INSURED as of 02/01/2013 or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or demand." See *Exhibit "A"* hereto.

27. The Imperium policy further includes an "INCIDENT EXCLUSION" endorsement, which expressly provides that "[t]his policy does not apply to any CLAIM arising out of the facts or circumstances" associated with a number of other individual claims, including those associated with James Harbin. See *Exhibit "A"* hereto.

### D. DECLARATORY RELIEF

28. Imperium denies any obligation under the policy to provide coverage and/or any duty to indemnify or defend any party, named or otherwise, in response to the allegations, causes of action, and claims for damages alleged or otherwise asserted in Caviness's Complaint.

### COUNT I

29. Imperium hereby adopts and incorporates by reference paragraphs 1-28, including all sub-paragraphs, herein.

30. Imperium is entitled to a declaratory judgment that there is no indemnity coverage under the above referenced Lawyers Professional Liability Insurance Policy for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint against the Shelton Defendants because:

   a. The Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint arises out of alleged "wrongful acts" occurring prior to the effective date of the Imperium policy (i.e., February 1, 2013), and the Shelton Defendants, at or before the effective date of the Imperium policy, knew or could have reasonably foreseen that such wrongful acts might be expected to be the basis of a claim, such that coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.II.B.;

   b. Additionally, and/or, in the alternative, the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint arises out of a series of "related acts or omissions," and/or related "wrongful acts" that also gave rise to the claim(s) asserted by James Harbin, and/or are "related claims," as those terms are defined under the policy, and, therefore, is considered to have been made at the time the claim(s) asserted by James Harbin were first made on January 28, 2013, which was prior to the February 1, 2013 effective date of the Imperium Policy, such that coverage is not afforded for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint, pursuant to Section I.A.;

   c. Additionally, and/or, in the alternative, the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint arises out of the same or essentially the same facts alleged by James Harbin, demand for which was made on January 28, 2013 and was pending on February 1, 2013, such that coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "PRIOR AND PENDING LITIGATION ENDORSEMENT";

   d. Additionally, and/or, in the alternative, the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint arises out of the fact or circumstances alleged by James Harbin, such that coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "INCIDENT EXCLUSION";

   e. Further, in the event either Jason Shelton and/or Shelton & Associates, P.A. were adjudged to have committed any intentional, dishonest,

        fraudulent or malicious WRONGFUL ACT, as alleged in the Caviness Complaint, coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.I;

   f.    Coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is further subject to the provisions of Section XI. of the Imperium policy ("OTHER INSURANCE"), in the event there is other insurance applicable to any CLAIM alleged in the Caviness Complaint that is covered by the Imperium policy.

## COUNT II

   31.    Imperium hereby adopts and incorporates by reference paragraphs 1-30, including all sub-paragraphs, herein.

   32.    Imperium is entitled to a declaratory judgment that there is no indemnity coverage under the above referenced Lawyers Professional Liability Insurance Policy for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint against the Shelton Defendants because:

   a.    The Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint arises out of alleged "wrongful acts" occurring prior to the effective date of the Imperium policy (i.e., February 1, 2013), and the Shelton Defendants, at or before the effective date of the Imperium policy, knew or could have reasonably foreseen that such wrongful acts might be expected to be the basis of a claim, such that coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.II.B.;

   b.    Additionally, and/or, in the alternative, the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint arises out of a series of "related acts or omissions," and/or related "wrongful acts" that also gave rise to the claim(s) asserted by James Harbin, and/or are "related claims," as those terms are defined under the policy, and, therefore, is considered to have been made at the time the claim(s) asserted by James Harbin were first made on January 28, 2013, which was prior to the February 1, 2013 effective date of the Imperium Policy, such that coverage is not afforded for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint, pursuant to Section I.A.;

    c.    Additionally, and/or, in the alternative, the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint arises out of the same or essentially the same facts alleged by James Harbin, demand for which was made on January 28, 2013 and was pending on February 1, 2013, such that coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "PRIOR AND PENDING LITIGATION ENDORSEMENT";

    d.    Additionally, and/or, in the alternative, the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint arises out of the fact or circumstances alleged by James Harbin, such that coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "INCIDENT EXCLUSION";

    e.    Further, in the event either Jason Shelton and/or Shelton & Associates, P.A. were adjudged to have committed any intentional, dishonest, fraudulent or malicious WRONGFUL ACT, as alleged in the Caviness Complaint, coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.I;

    f.    Coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is further subject to the provisions of Section XI. of the Imperium policy ("OTHER INSURANCE"), in the event there is other insurance applicable to any CLAIM alleged in the Caviness Complaint that is covered by the Imperium policy.

## COUNT III

33.    Imperium hereby adopts and incorporates by reference paragraphs 1-32, including all sub-paragraphs, herein.

34.    Imperium is entitled to a declaratory judgment that there is no indemnity coverage under the above referenced Lawyers Professional Liability Insurance Policy for the Punitive Damages cause of action asserted in Caviness's Complaint against the Shelton Defendants because:

    a.    The Punitive Damages cause of action asserted in Caviness's Complaint arises out of alleged "wrongful acts" occurring prior to the effective date of the Imperium policy (i.e., February 1, 2013), and the Shelton Defendants, at or before the effective date of the Imperium policy, knew

        or could have reasonably foreseen that such wrongful acts might be expected to be the basis of a claim, such that coverage for the Punitive Damages cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.II.B.;

b.     Additionally, and/or, in the alternative, the Punitive Damages cause of action asserted in Caviness's Complaint arises out of a series of "related acts or omissions," and/or related "wrongful acts" that also gave rise to the claim(s) asserted by James Harbin, and/or are "related claims," as those terms are defined under the policy, and, therefore, is considered to have been made at the time the claim(s) asserted by James Harbin were first made on January 28, 2013, which was prior to the February 1, 2013 effective date of the Imperium Policy, such that coverage is not afforded for the Punitive Damages cause of action asserted in Caviness's Complaint, pursuant to Section I.A.;

c.     Additionally, and/or, in the alternative, the Punitive Damages cause of action asserted in Caviness's Complaint arises out of the same or essentially the same facts alleged by James Harbin, demand for which was made on January 28, 2013 and was pending on February 1, 2013, such that coverage for the Breach of Fiduciary Duty cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "PRIOR AND PENDING LITIGATION ENDORSEMENT";

d.     Additionally, and/or, in the alternative, the Punitive Damages cause of action asserted in Caviness's Complaint arises out of the fact or circumstances alleged by James Harbin, such that coverage for the Negligence/Legal Malpractice cause of action asserted in Caviness's Complaint is expressly excluded pursuant to the "INCIDENT EXCLUSION";

e.     Additionally, and/or, in the alternative, coverage for the Punitive Damages cause of action asserted in Caviness's Complaint is excluded pursuant to Section XI.4. of the Imperium policy;

f.     Further, in the event either Jason Shelton and/or Shelton & Associates, P.A. were adjudged to have committed any intentional, dishonest, fraudulent or malicious WRONGFUL ACT, as alleged in the Caviness Complaint, coverage for the Punitive Damages cause of action asserted in Caviness's Complaint is expressly excluded under Section XII.I;

g.     Coverage for the Punitive Damages cause of action asserted in Caviness's Complaint is further subject to the provisions of Section XI. of the Imperium policy ("OTHER INSURANCE"), in the event there is other

>insurance applicable to any CLAIM alleged in the Caviness Complaint that is covered by the Imperium policy.

35.    Imperium is entitled to further declaratory judgment that, under the above referenced Lawyers Professional Liability Insurance Policy, Imperium is not required to defend the Shelton Defendants, either individually or collectively, for the allegations, causes of action, and claims for damages alleged or otherwise asserted in the Caviness Complaint, and is entitled to terminate its defense.

36.    Additionally, Imperium is entitled to a declaratory judgment that it has no duty to pay or otherwise contribute any insurance proceeds, benefits or other monetary sums towards any settlement, judgment, or verdict rendered against the Shelton Defendants, either individually or collectively, for the allegations, causes of action, and claims for damages alleged or otherwise asserted in Caviness's Complaint.

**WHEREFORE, PREMISES CONSIDERED,** Imperium Insurance Company, respectfully prays that this Honorable Court grant a declaratory judgment in its favor and against the Defendants, Jason Shelton, Shelton & Associates, P.A., and Karen Caviness, and order the following:

A.    That the Lawyers Professional Liability Insurance Policy issued by Imperium to the Shelton Defendants does not provide indemnity coverage for the allegations, causes of action, and claims for damages alleged or otherwise asserted in Caviness's Complaint;

B.    That Imperium is not required to defend the Shelton Defendants, either individually or collectively, in said civil action under the terms, conditions, and/or exclusions of its Lawyers Professional Liability Insurance Policy, as referenced above, and is entitled to terminate such defenses;

  C. That Imperium is not required to pay or otherwise contribute any insurance proceeds, benefits or other monetary sums towards any settlement, judgment or verdict rendered against the Shelton Defendants, either individually or collectively, for the allegations, causes of action, and claims for damages alleged or otherwise asserted in Caviness's Complaint; and,

  D. That Imperium is entitled to receive any and all other just and proper relief.

  RESPECTFULLY SUBMITTED, this the 8th day of May, 2014.

**IMPERIUM INSURANCE COMPANY**

  BY: *Stuart Robinson, Jr.*
    STUART ROBINSON, JR. (MSB # 5624)
    LEO J. CARMODY, JR. (MSB # 100738)

OF COUNSEL:

WELLS MARBLE & HURST, PLLC

Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone: (601) 605-6900
Facsimile: (601) 605-6901
E-Mail: srobinson@wellsmar.com

2091 Old Taylor Road, Suite 101
Post Office Box 2477
Oxford, Mississippi 38655
Telephone: (662) 236-1500
Facsimile: (662) 236-2374
Email: lcarmody@wellsmar.com