IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

IMPERIUM INSURANCE COMPANY                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 1:14-CV-00083-NBB-DAS

JASON SHELTON, SHELTON & ASSOCIATES, P.A.,
AND KAREN CAVINESS, ADMINISTRATRIX OF THE
ESTATE OF MAMIE KATHERINE CHISM, DECEASED                    DEFENDANTS


JASON SHELTON AND
SHELTON & ASSOCIATES, P.A.                              COUNTER-PLAINTIFFS

V.

IMPERIUM INSURANCE COMPANY                          COUNTER-DEFENDANT

<u>MEMORANDUM OPINION</u>

        Presently before the court are the plaintiff's motions for summary judgment and partial

summary judgment.  Upon due consideration of the motion, responses, exhibits, and supporting

and opposing authority, the court is ready to rule.[1]

<u>Factual and Procedural Background</u>

        This case is simply about whether a policy of liability insurance issued by the plaintiff,

Imperium Insurance Company ("Imperium"), to cover Defendants, Jason Shelton and Shelton &

Associates, P.A. ("Shelton Defendants"), should be invalidated or rescinded.  The Shelton

Defendants completed and submitted an application for malpractice insurance with Imperium on

January 8, 2013.  Imperium subsequently issued to the Shelton Defendants a "claims made and

reported" Lawyers Professional Liability Insurance Policy with a policy period from February 1,

2013 to February 1, 2014.

---

[1] The plaintiff has two pending declaratory actions before the undersigned judge regarding coverage issues arising
from the same insurance policy and has filed motions for summary judgment and partial summary judgment in both
cases.  Because many of the issues in the two cases overlap and interrelate, the court has addressed the motions in a
single opinion to be filed in each case.

The policy at issue expressly excluded coverage for certain matters. The exclusion relevant to the instant case provided as follows:

> This policy does not apply to:
> II.     any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if:
>         B.     [] the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

The policy defines "wrongful acts" to mean "any actual or alleged: A. act; B. error; C. omission; D. misstatement; E. misleading statement; F. neglect or breach of duty . . . ."

Prior to their application for the aforementioned policy, the Shelton Defendants represented two clients in the circuit courts of Calhoun County and Tippah County, Mississippi, relevant to the instant case, Paul Tyler and the Estate of Mamie Katherine Chism.

*Representation of Tyler*

The following facts concerning the Shelton Defendants' representation of Tyler in the state circuit court are undisputed. After Automotive Finance Company, Inc. ("AFC") filed suit sometime in 2001 in the Circuit Court of Calhoun County, Mississippi, the Shelton Defendants began representing Tyler. Problems began to arise on May 24, 2007, when AFC served its first requests for admissions on Tyler in the state court and no response on his behalf was filed. On July 7, 2007, and again on August 7, 2007, AFC filed motions to hold those requests for admissions as admitted. Again counsel filed no response on Tyler's behalf.

It was not until October 30, 2007, that the Shelton Defendants took action on their client's behalf and filed in the state court a letter and motion for a continuance on the hearing for the motions to hold the requests for admissions as admitted. When the hearing was held on January 30, 2008, in the state court, the Shelton Defendants appeared on Tyler's behalf but took no action to oppose the requests for admissions being admitted. In fact, when the court gave

counsel an opportunity to argue on Tyler's behalf, counsel simply responded "Your honor, the defendant has no response, no response at all, Your Honor." The requests for admissions were, consequently, deemed admitted.

On September 23, 2010, AFC filed a motion for summary judgment in the state court based upon the admissions, seeking damages in the amount of approximately 2.9 million dollars. The Shelton Defendants failed to respond to this motion on Tyler's behalf. AFC later filed a supplemental motion for summary judgment on January 6, 2001, but, again, counsel filed no response on Tyler's behalf. The state circuit court held a hearing on AFC's motion on March 21, 2001, but no one appeared on Tyler's behalf. In fact, a Shelton associate was present in the courtroom on that day and was informed of the pendency of hearing but chose to leave. The state court entered an order that same day granting AFC's motion and entering a judgment against Tyler in the amount requested.

Shelton eventually took action on March 24, 2011, and filed a motion to set aside the order granting AFC's motion for summary judgment. Shelton also filed a motion for leave to amend response to plaintiff's requests for admissions months later on November 29, 2011. The state court denied both motions by orders entered on January 31, 2012. Though Shelton did appeal the circuit court orders, the Mississippi Supreme Court ultimately affirmed. As a result of the adverse judgment, Tyler was later forced to file bankruptcy.

In a letter dated December 3, 2013, Robert Dambrino, counsel for Stephen Livingston, the Trustee of Tyler's bankruptcy estate, informed the Shelton Defendants that he intended to pursue a malpractice action against them based on their representation of Tyler. Imperium learned just a few days later of the potential claim. On February 14, 2014, Livingston filed a complaint in the Circuit Court of Lee County, Mississippi, against the Shelton Defendants alleging attorney malpractice.

*Representation of the Estate of Chism*

The Shelton Defendants also represented the Estate of Mamie Katherine Chism in a wrongful death action against the manufacturers of the prescription drug, Vioxx. Chism's niece, Margaret Bailey, hired the Shelton Defendants to represent Chism's estate after Chism died of a heart attack on December 14, 2003. Chism had taken the drug for a number of years. Vioxx is an anti-inflammatory medication determined to have been linked to heart defects in persons who took the drug. Vioxx was taken off the market in 2004.

The Shelton Defendants filed the wrongful death action on behalf of Chism's estate in the Circuit Court of Tippah County, Mississippi, on October 25, 2007. The case was subsequently removed to federal court and transferred to the Vioxx multi-district litigation ("MDL") in the United States District Court for the Eastern District of Louisiana.

In early 2008, the drug manufacturer agreed to settle all pending claims in the MDL court. Counsel enrolled Chism's claim in the settlement program. To successfully enroll, a claimant was required to submit some basic information including proof that the person actually took Vioxx. Bailey alleged that she provided the necessary medical documentation to the Shelton Defendants. Though the Shelton Defendants had several months to submit the requisite information and were even provided with a number of reminders and notices from the MDL court, they failed to do so by the July 1, 2008 filing deadline.

On August 21, 2009, Chism's claim was dismissed by "Stipulation of Dismissal with Prejudice," which Shelton personally signed. On October 5, 2009, Shelton petitioned the MDL court to allow Chism's estate to opt out of the settlement or, in the alternative, to allow him more time to submit the requisite documentation. Shelton expressly acknowledged in the motion that the deadline to submit a claims package to the MDL court lapsed and that the claim was

subsequently dismissed.  On October 7, 2009, the MDL court denied Shelton's motion to opt out

or to allow additional time to submit the documentation.  The Shelton Defendants did not advise

Bailey that Chism's claim had been dismissed with prejudice until after this motion was denied.

Bailey died on February 28, 2011.  Sometime in 2013, attorney Phillip Thomas notified

Bailey's family of the Shelton Defendants' alleged negligence in his handling of the Vioxx

claim.  On January 6, 2014, Karen Caviness, as Administratrix of Chism's estate, filed a

malpractice action against the Shelton Defendants.

After Imperium investigated the underlying claims, it contacted the Shelton Defendants

and informed them that it did not believe the policy provided coverage for either the Tyler or

Chism claim.  Imperium did, however, indicate that it would provide the Shelton Defendants

with a defense under a reservation of rights and that they were free to retain independent counsel

at Imperium's expense.  Imperium further informed them that it intended to file declaratory

actions to resolve the coverage dispute.

Accordingly, on May 8, 2014, Imperium filed the instant declaratory actions, asserting

that coverage is excluded for both claims because of the policy's Prior Knowledge Exclusion.  In

both cases, Imperium contends that the Shelton Defendants knew or could have reasonably

foreseen that their failures might later form the basis of a claim against them.  Imperium further

asserts that it is entitled to rescind the policy because Shelton made material misstatements of

fact in the insurance application.  The Shelton Defendants subsequently filed counter-claims

alleging bad faith denial and estoppel.  Imperium now moves for summary judgment in both

declaratory actions.

<u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  Further, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.*  Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986).  "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

<u>Analysis</u>

I.     *Rescission*

Imperium requests that the court allow it to rescind the policy on the basis that the Shelton Defendants made a material misrepresentation of fact in the application for insurance. Specifically, Imperium asserts that the Shelton Defendants made a material misrepresentation in response to the following question (Question 30(b)) on the application:  "After inquiry, are any attorneys in your firm aware (b) of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?"  The Shelton Defendants responded "No" to this question.

"Under Mississippi law, if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false application is entitled to void or rescind the policy." *Carroll v. Metro Ins. & Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999). A misstatement is material to the risk "if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk." *Massachusetts Mut. Life Ins. Co. v. Nicholson*, 775 F. Supp. 954, 959 (N.D. Miss. 1991). "Materiality is determined by reference to the time of the misrepresentation." *Republic Fire and Cas. Ins. Co. v. Azlin*, No. 4:10-CV-037-SA-JMV, 2012 WL 4482355, at *6 (N.D. Miss. Sept. 26, 2012) (citing *Edmiston v. Schellenger*, 343 So. 2d 465, 467 (Miss. 1977)). "The party seeking to void the insurance contract . . . must establish the existence of a factual misrepresentation and its materiality by clear and convincing evidence." *Carroll*, 166 F.3d at 805. "If the applicant for insurance undertakes to make a positive statement of fact, if it be material to the risk, such fact must be true. It is not sufficient that he believe it true, but it must be so in fact, or the policy will be avoided." *Nationwide Mut. Fire Ins. Co. v. Dungan*, 634 F. Supp. 674, 681 (S.D. Miss. 1986). Therefore, "[w]hether the misrepresentation was intentional, negligent, or the result of mistake or oversight is of no consequence." *Carroll*, 166 F.3d at 805.

Imperium asserts that in failing to disclose their knowledge of the potential that a claim for malpractice might be asserted on behalf of Chism's Estate, as requested in Question 30(b) of the application, the Shelton Defendants are clearly guilty of making a material misrepresentation. Imperium argues that whether or not the Shelton Defendants intended to deceive Imperium, it is clear that, had they reported the potential for a claim on the application, coverage for the claims asserted by Caviness on behalf of Chism's estate would have been excluded.

On January 28, 2013, attorney Phillip Thomas, the attorney who represents Caviness in the underlying malpractice action, sent the Shelton Defendants a letter informing them that he

represented a former Shelton client, James Harbin, and that he intended to pursue a malpractice action against them on Harbin's behalf, based on the Shelton Defendants' negligent handling of Harbin's Vioxx claim. In the same letter, Thomas also stated that he intended to investigate further to determine if other former Shelton clients would have potential malpractice claims.

Harbin took Vioxx from January 2001 until September 2002, during which time Harbin suffered two non-fatal heart attacks. The Shelton Defendants began representing Harbin in January 2005 and filed a complaint on Harbin's behalf on January 7, 2008. Like Chism's case, Harbin's was soon removed to federal court and transferred to the multi-district litigation pending in the Eastern District of Louisiana. After the drug manufacturer agreed to settle all claims pending in the MDL court, Harbin and Shelton decided that settlement was the best option, and Shelton proceeded to enroll Harbin in the settlement program. As in the Chism case, the Shelton Defendants failed to submit a complete claims package on Harbin's behalf by the July 1, 2008 deadline.

The MDL court issued a Claims Deficiency Report stating that the Release, part of the requisite documentation, was required to be, but was not, signed by Harbin's wife. The Shelton Defendants did not correct this deficiency, nor did they notify Harbin of the deficiency. As a result, Harbin's Vioxx claim was dismissed on September 9, 2009.

Shelton filed a motion in the MDL court on October 5, 2009, to allow Harbin to opt out of the settlement program or to accept Harbin's documentation out of time. The MDL court denied the motion on October 7, 2009. These are the same dates as the motion and order for the Chism Vioxx claim. The MDL court's order denying the motion in Harbin's case references the Chism claim as well as five others.

Instead of advising Harbin of this information, the Shelton Defendants had Harbin sign a medical authorization on October 30, 2009, and subsequently issued subpoenas for medical

records.  Over two years later, by letter dated February 24, 2012, the Shelton Defendants notified Harbin that the firm no longer represented him.

Imperium was advised of the Harbin claim near the end of January 2013, prior to the effective date of the policy.  As a result, Imperium revised the policy terms to provide for an "Incident Exclusion" for the Harbin claim, stating that the policy did not apply to "any claim arising out of facts or circumstances" associated with Harbin.

The deposition testimony of the insurance agent who procured the policy issued to the Shelton Defendants confirms that, like the coverage for the Harbin claim, coverage for the claims asserted by Caviness would have been excluded had they been reported by Shelton on the application:

> Q.    Had Mr. Shelton reported another Vioxx claim prior to the inception of the policy period similar in nature of the Harbin claim, what would have happened?
>
> A.    Well, it definitely would have been excluded like the Harbin claim.

Imperium asserts that these facts make clear that the Shelton Defendants are guilty of making a material misrepresentation in the insurance application such that Imperium is entitled to rescind the policy issued to the Shelton Defendants as a matter of law.

The Shelton Defendants assert in response to Imperium's argument that they did not make a material misrepresentation on the insurance application because no one associated with the firm was aware that an underlying suit would be the basis of a malpractice claim.  The Shelton Defendants' argument addresses only the firm's alleged lack of subjective knowledge. Question 30(b), however, like the test for application of the Prior Knowledge Exclusion, addressed below, contains an objective element:  "After inquiry, are any attorneys in your firm aware (b) of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?"  The Shelton Defendants knew of the Harbin malpractice action, and knew

that the Harbin suit arose out of facts and circumstances very similar and even interrelated to the Chism action. The inquiry is not whether Shelton or the other members of his firm subjectively knew that a specific malpractice action was going to be filed but whether they subjectively knew of any legal work or incidents that might objectively reasonably be expected to lead to a claim or suit. To answer this question in the negative would appear to be disingenuous. Of course, as set forth above, "[w]hether the misrepresentation was intentional, negligent, or the result of mistake or oversight is of no consequence." *Carroll*, 166 F.3d at 805.

The court finds that the Shelton Defendants did in fact make a misrepresentation in the application for the insurance policy at issue by giving an incomplete or misleading answer to Question 30(b) and that said misrepresentation is material, in that the uncontested facts before the court reveal that Imperium would not have issued the policy to Shelton & Associates without at least an incident exclusion for the Chism action had it known the true facts. The record establishes that Imperium is entitled to rescind or otherwise void the policy issued to the Defendants.

II.      *Prior Knowledge Exclusion*

The court further finds that even if the policy were to remain in effect, both the Tyler and Chism actions would be excluded from coverage based on the Prior Knowledge Exclusion. Under Mississippi law, insurance policies are like any other contract and are to be enforced according to their provisions. *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 859 (Miss. 2007). Moreover, when the terms of an insurance policy are clear and unambiguous, their meaning and effect are matters of law. *Universal Underwriters Ins. Co. v. Buddy Jones Ford, Lincoln-Mercury Inc.*, 734 So. 2d 173, 176 (Miss. 1999). Accordingly, the determination of whether coverage for a particular claim exists depends upon the language of the policy. *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002). In addition, any

obligation of the insurer with regard to the policy is "to be determined by analyzing the allegations of the complaint or declaration in the underlying action." *Id.*

Turning to the interpretation and application of the Prior Knowledge Exclusion in the instant case, the court first notes that neither the Mississippi Supreme Court nor the Mississippi Court of Appeals has yet had the opportunity to address such provisions. In fact, only one court in Mississippi has had such an occasion. Consequently, the court looks to the aforementioned case and cases from other jurisdictions for guidance.

After careful review, the court finds that most courts have interpreted and applied Prior Knowledge Exclusions in generally the same manner. Courts have created a two-prong approach whereby coverage should be excluded in one of two circumstances. *See Nat'l Cas. Co. v. Franklin Cty., Miss.*, 718 F. Supp. 2d 785, 793 (S.D. Miss. 2010); *Westport Ins. Corp. v. Cotten Schmidt, LLP*, 605 F. Supp. 2d 796, 803 (N.D. Tex. 2009); *Coregis Ins. Co. v. City of Harrisburg*, 2005 WL 217934, at *6 (M.D. Pa. Sept. 9, 2005); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F. Supp. 2d 601, 608-611 (E.D. Tex. 2003); *Selko v. Home Ins. Co.*, 139 F.3d 146, 150-153 (3d Cir. 1998).

Under the first prong, referred to as the "subjective prong," coverage is excluded if the insured had subjective knowledge, prior to the beginning of the policy period, that his client intended to bring a claim. *Atchley*, 267 F. Supp. 2d at 608. Under the second prong, referred to as the "objective prong," the court asks the following question: "What would any reasonable attorney expect, given the facts of which the insured was actually aware?" *Id.* Within this objective prong, courts have adopted a two-step analysis. *Id. See also Franklin County*, 718 F. Supp. 2d at 793. First, a court must examine the facts or circumstances giving rise to the underlying action of which the insured was subjectively aware prior to the effective date of the policy. *Atchley*, 267 F. Supp. 2d at 609. Then, after the court has determined what facts or

circumstances the insured subjectively knew, "the exclusion requires the [c]ourt to make an objective assessment of those facts." *Id.* In other words, the question then becomes whether a reasonable attorney, with knowledge of those facts and circumstances, could have reasonably foreseen that such facts or circumstances might later form the basis of a claim. *Id. See also Franklin County*, 718 F. Supp. 2d at 793; *Cotton Schmidt*, 605 F. Supp. 2d at 803; *Coregis*, 2005 WL 217934 at *6; *Selko*, 139 F.3d at 608-611.

Imperium cannot demonstrate that the Shelton Defendants were subjectively aware that their client intended to bring a claim against them. Therefore, Imperium contends that the Shelton Defendants were subjectively aware of the facts and circumstances giving rise to the underlying malpractice action and that a reasonable attorney with knowledge of such facts could have reasonably foreseen that they might form the basis of a claim.

The court first notes that the Shelton Defendants do not dispute that they were aware of the underlying factual circumstances giving rise to the Tyler malpractice action. But, even if they were to dispute knowledge of these factual circumstances, Shelton's actions after the judgment against Tyler was entered clearly demonstrate an awareness of them. Specifically, in filing a motion to set aside the order granting AFC's motion for summary judgment on March 24, 2011, the Shelton Defendants undoubtedly were aware that the motion had been granted and that no response on Tyler's behalf was filed nor was anyone present at the hearing on said motion. And in filing the motion for leave to amend Tyler's response to plaintiff's requests for admission on November 29, 2011, the Shelton Defendants obviously were aware that no response had been filed. Accordingly, because the policy at issue became effective February 1, 2013, and because Shelton took these two actions more than a year prior to this date, the court finds that the Shelton Defendants were subjectively aware of the facts giving rise to the underlying malpractice action prior to the policy's effective date.

Imperium next argues that any reasonable attorney with knowledge of these facts could have reasonably foreseen that they might later form the basis of the claim because these failures resulted in an adverse judgment against Tyler in the amount of 2.9 million dollars. Imperium's assertion is supported by court decisions which consistently have found that, when an attorney's negligent failures result in an adverse judgment against their client, a reasonable attorney could have reasonably foreseen the potential for a malpractice claim. *See Chicago Ins. v. Paulson & Nace*, 37 F. Supp. 3d 281 (D.D.C. 2014); *Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson*, F. Supp. 2d 647 (D.Md. 2012); *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399 (D.D.C. 2011); *Worth v, Tamarack American*, 47 F. Supp. 2d 1087 (S.D. Ind. 1999); *Home Indemnity Co. v. Toombs*, 910 F. Supp. 1569 (N.D. Ga. 1995).

The Shelton Defendants make several arguments as to why a reasonable attorney would not have reasonably foreseen that these facts could potentially form the basis of a claim. They first contend that no reasonable attorney would have foreseen such a claim because the client, Tyler, never gave an indication of a claim and, consequently, that they did not believe any such claim would be filed. The Shelton Defendants, however, miss the point. Whether the insured subjectively believes that a client will pursue a claim is relevant only to the "subjective" prong and has no bearing whatsoever when analyzing under the "objective" prong. *See Weddington v. United National Ins. Co.*, 346 F. App'x 224 (9th Cir. 2009); *Capitol Specialty*, 793 F. Supp. 2d at 411; *Abood v. Gulf Group Lloyds*, 2008 WL 2641310, *8 (W.D. Pa. 2008). Moreover, "whether an attorney's client has expressed dissatisfaction with the attorney" is simply irrelevant when, like here, the underlying malpractice action is brought not by the former client, but instead by a third party. *Cotten Schmidt*, 605 F. Supp. 2d at 805.

The Shelton Defendants next make a combination of arguments which essentially amount to mere excuses or justifications for their failures. First, they contend that the failure to respond

to the requests for admissions was caused by an attorney no longer employed by Shelton.  Next, they assert that the adverse judgment against Tyler was a result of Tyler's failure to appear at the hearing on the motion to hold the requests for admissions as admitted.  Lastly, the Shelton Defendants opine that their failure to attend the summary judgment hearing was not the reason that an adverse judgment was entered against Tyler.  Whether or not these arguments have merit, however, has no bearing on the instant coverage dispute.  Instead, these are only relevant in determining whether the Shelton Defendants should be held liable in the underlying malpractice suit.

Finally, the Shelton Defendants contend that no reasonable attorney would have foreseen such a claim because any reasonable attorney would have thought any such claim would be barred by the applicable statute of limitations.  However, it is undeniable that plaintiffs frequently file claims that are later determined to have been barred by an applicable limitations period.  Consequently, no reasonable attorney can just assume they are safe from a potential lawsuit simply because they believe such suit would be untimely.  But, more importantly, the Shelton Defendants' belief in this instance is incorrect.  A three-year statute of limitations applies to actions for legal malpractice in Mississippi.  *Channel v. Loyacono*, 954 So. 2d 415, 420 (Miss. 2007); Miss. Code Ann. § 15-1-49.  The alleged failures by the Shelton Defendants extend as late as March 21, 2011, when no one appeared on Tyler's behalf and the court entered a judgment against Tyler in the amount of 2.9 million dollars.  Livingston, on behalf of Tyler's bankruptcy estate, brought the underlying malpractice action on January 27, 2014.  Accordingly, the underlying malpractice action was in fact timely.

Based on the foregoing discussion, the court finds that the Shelton Defendants' arguments are without merit.  As already discussed, they were aware of the factual circumstances forming the basis of the underlying malpractice complaint.  And based on the preceding

discussion, the court finds that a reasonable attorney with knowledge of these factual circumstances could have reasonably foreseen that such facts might later form the basis of a claim. Accordingly, the court finds that coverage for the Tyler malpractice action is excluded by the policy's Prior Knowledge Exclusion.

The court likewise finds that coverage for the Chism malpractice action is excluded by the Prior Knowledge Exclusion. It is clear to the court that the Shelton Defendants knew or could have reasonably foreseen that the "wrongful acts" committed by them during the Chism litigation prior to the effective date of the policy could be the basis of a malpractice claim against them. Shelton expressly acknowledged in the motion to opt out filed in the MDL court that the deadline to submit a claims package had lapsed and that the claim was subsequently dismissed. The Shelton Defendants thus clearly had subjective knowledge of facts that could give rise to a malpractice claim; and objectively, as reasonable attorneys, they should have foreseen that a claim could result from these facts. The Shelton Defendants therefore should have reported the potential claim in the application for insurance with Imperium.

Further, both Bailey and Caviness voiced their dissatisfaction with the firms' handling of the Vioxx claim. Amanda Daniels, an attorney at the Shelton firm, stated in her affidavit that at an August 18, 2009 meeting with Bailey, "Jason L. Shelton was very apologetic to Margaret J. Bailey" regarding the handling of the Chism claim, thus acknowledging both wrongdoing on his part and his awareness that his client was upset with her representation. According to Daniels, "Bailey was annoyed and unhappy to learn that she would not get any settlement proceeds . . . ." Caviness testified at her deposition that she expressed her disappointment regarding the handling of the Chism Vioxx action directly to an employee of Shelton & Associates more than a year prior to the Shelton Defendants' submission of the application for insurance coverage with

Imperium.  With this knowledge, a reasonable attorney could have foreseen that a malpractice claim might be filed against the firm.

The MDL court's denial of the motion to opt out or to allow more time for compliance essentially left Chism's estate with no remedy for her Vioxx-related claim.  Similarly, the Shelton Defendants' handling of James Harbin's Vioxx claim left Harbin without recourse and without a settlement of over $300,000.00 that his attorney asserts would have been paid to him had Shelton submitted the proper documentation to the settlement administrator.  As Imperium states, "[A]ny doubt that a claim might result from the failure to timely submit the required documentation should have disappeared when . . . Harbin asserted a malpractice claim for these exact same reasons," referring to the facts that gave rise to the Chism malpractice action.

In response to the plaintiff's summary judgment motion in the Chism action, the Shelton Defendants make basically the same arguments they made in response to the plaintiff's summary judgment motion in the Tyler action, including the statute of limitations argument, arguments based on other possible available defenses to the underlying malpractice action, and arguments that essentially amount to no more than excuses and justifications for the firm's negligence.  The court rejects these arguments, as they are irrelevant and otherwise generally without merit.

### III.     Shelton-Defendants' Counter-Claims

The court now briefly addresses the Shelton Defendants' counter-claims.  They first assert a claim for bad-faith denial of coverage.  It is axiomatic that "an insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim." *Stubbs v. Miss. Farm Bureau Cas. Ins. Co.*, 825 So. 2d 8, 13 (Miss. 2002) (citing *USF&G Co. v. Wiggington*, 964 F.2d 487, 492 (5th Cir. 1992) (applying Mississippi law)); *see also Amfed Nat. Ins. Co. v. NTC Transp., Inc.*, 196 So. 3d 947, 953 (Miss. 2016) (declining to address insured's bad faith claims after determining that there was no coverage on the underlying claims).  Since

the court has found that the policy at issue does not provide coverage for the underlying malpractice claims by virtue of the policy's Prior Knowledge Exclusion, the Shelton Defendants' bad faith claim is without merit.

The Shelton Defendants additionally argue that Imperium is estopped from denying coverage, contending that both promissory estoppel and equitable estoppel apply in the instant case. The court, however, finds that under either theory, the claim fails. In support of their estoppel claim, the Shelton Defendants merely contend that Shelton paid for the policy at issue, and that "the law in Mississippi is that once you accept payment you are to provide the service you agreed and promised to provide." The Shelton Defendants fail to cite any supporting authority for this bare assertion. And while this logic may be sound, it ultimately provides them no relief. The policy at issue, which the Shelton Defendants paid for, contains a Prior Knowledge Exclusion that expressly excludes coverage in circumstances like these. So, although the Shelton Defendants may be dissatisfied with their purchase, they are in fact getting what they purchased. Because the Shelton Defendants fail to provide the court with any other basis for the estoppel claim, it fails.

## Conclusion

In accordance with the foregoing analysis, the court finds that the plaintiff is entitled to summary judgment on all claims in the Tyler and Chism declaratory actions before this court. The court finds that Imperium is entitled to void and rescind the insurance policy based on the Shelton Defendants' material misrepresentations. The court further finds that even if the policy were not rescinded, the Tyler and Chism malpractice actions are excluded from coverage based on the Prior Knowledge Exclusion in the policy.

The court additionally finds that the plaintiff is entitled to summary judgment on the defendants'
counter-claims.  A separate order in accord with this opinion shall issue this day.

This, the 29th day of September, 2016.


 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**